UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JACK SMITH,

        Plaintiff,

v.

KIMBERLY WEASE, et al.,

        Defendants.
_____/

Case No. 1:24-cv-1035

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does

2

not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's action for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred there. Plaintiff sues the MDOC itself, as well as Registered Nurse Kimberly Wease.

Plaintiff alleges that on January 32, 2023, he had a callout "to see the nurse." (Compl., ECF No. 1, PageID.3.) During that callout, Plaintiff's blood pressure was 219 over 103. (*Id.*) The nurse told Plaintiff that he had to be sent to the hospital because he "[could] die from this." (*Id.*) Plaintiff

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

claims that it took "them" a half an hour to "talk [him] into letting them send [him] to the hospital." (*Id.*) After about three hours at the hospital, Plaintiff was sent back to DRF. (*Id.*) When he returned, "they took [his] blood pressure and sent [him] right back to the hospital." (*Id.*)

Plaintiff goes on to state that on February 1, 2024, he had another callout to see the nurse. (*Id.*) Plaintiff claims that he "had to get away from [his] bunkie," so to accomplish this, he "lied to the nurse and told her [that he] had taken a bunch of pills because [he] did not want to live." (*Id.*) Plaintiff was placed in segregation on suicide watch. (*Id.*) The next day, Plaintiff saw his physician and said that he had only mentioned taking the pills so he would be moved. (*Id.*) Later that day, Plaintiff was "put back in general population in a different room and new bunkie." (*Id.*) More than a year "after the fact," Plaintiff received a document indicating that "they want [him] to pay the hospital bill of [$] 3,332.00." (*Id.*)

Plaintiff has attached 125 pages of medical records and other documents to his complaint. The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20- 4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations

omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint except to the extent that Plaintiff relies on the truth of those statements in his complaint.

Because Plaintiff submits these documents to show what treatment Plaintiff received and when he received it, the Court accepts as true the statements made by the healthcare providers at the outside hospital. "When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

Here, Plaintiff's account of what care was provided and when it was provided is flatly contradicted by the outside hospital medical record that he attaches to the complaint. Plaintiff recalls that his first visit to the hospital on January 31, 2023, was prompted by an abnormally high blood pressure reading and that he returned to the hospital again that same day for the same reason and that he faked the drug overdose the next day, but was not sent to the hospital then. (Compl., ECF No. 1, PageID.3.)

The hospital records, on the other hand, show that he first visited the emergency department during the afternoon and evening hours of January 31, 2023, because of the fake drug overdose. (ECF No. 1-1, PageID.63–131.) Moreover, based on the pills counted in Plaintiff's medications, and Plaintiff's representations to hospital staff, the "overdose" might not have been fake at all. (*Id.*, PageID.65–69.) Although the providers saw fit to discharge Plaintiff just a few hours after he arrived, his blood pressure was high the entire time he was at the hospital and going up when he was discharged. (*Id.*, PageID.72–85.) When Plaintiff arrived back at the prison, an abnormally high blood pressure reading prompted his return to the emergency department. (*Id*, PageID.24–

5

62.) He arrived around 11:15 p.m. on January 31, 2023; he was discharged at 12:01 a.m. on February 1, 2023. (*Id.*, PageID.31.)

The DRF medical records track the outside hospital's chronology, not Plaintiff's. Defendant advised Plaintiff that he was sent to the hospital on January 31, 2023, after telling the nurse that he "wanted to die and that [he] took multiple pills 4–5 hours earlier in the day." (*Id.*, PageID.12.) In response to a kite regarding the $3,332.00 charge, Defendant Wease told Plaintiff he is responsible for the $3,332.00 charge for that visit because "[he] commit[ed] acts of self injurious behavior." (*Id.*)

Based upon the foregoing, the Court does not construe Plaintiff's complaint to be asserting constitutional claims premised upon any deliberate indifference to his serious medical needs. Rather, the Court construes Plaintiff's complaint to be asserting Fourteenth Amendment procedural due process claims premised upon the fact that the MDOC has been deducting funds from his prison account for payment of the hospital bill. As relief, Plaintiff asks the Court to order the MDOC "to stop taking [his] money and to give back every doll[a]r taken from [him] under [these] false pretenses." (Compl., ECF No. 1, PageID.4.) He also requests that the MDOC be ordered to pay all court costs. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

6

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against the MDOC

As noted above, Plaintiff has named the MDOC as a Defendant in this matter. Plaintiff, however, may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24

F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. The Court, therefore, will dismiss the MDOC as a Defendant.

**B.     Due Process**

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon the fact that the MDOC has been deducting funds from his prison account for payment of the hospital bill. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, (2) a deprivation of that interest, and (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff's situation involves the interplay between two MDOC policy directives: MDOC Policy Directive 03.04.101, Prisoner Health Care Copayment (eff. May 2, 2022) and MDOC Policy Directive 04.02.105, Prisoner Funds (eff. Jan. 1, 2010).[2] The Health Care Copayment policy

---

[2] The Court takes judicial notice of the versions of those policy directives in effect at the time of the events alleged in Plaintiff's complaint. *See, e.g.*, *Twombly*, 550 U.S. at, 568 n.13 (noting that

8

permits the MDOC to charge a prisoner for certain costs associated with the provision of healthcare. For example, in many circumstances a prisoner is charged a $5.00 copayment for each medical, dental, and optometric visit. Moreover, if a prisoner is found guilty of a Class I misconduct, he may be charged the full amount of the cost of emergency and subsequent medical care. Furthermore, a prisoner who intentionally injures himself and receives emergency and subsequent medical care for that injury will be charged the full cost of that care. MDOC Policy Directive 03.04.101, ¶¶ C, E, and H.

The United States Court of Appeals for the Sixth Circuit has held that "inmates do have a protected property interest in their money." *See Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001) (citing *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997)). To the extent money is being removed from Plaintiff's account, arguably he is suffering a deprivation of his property. But there are times when the removal of property is not a constitutionally significant deprivation. In the context of the provision of medical services, the Sixth Circuit has recognized that taking money

---

the district court "was entitled to take notice of the full contents of the published articles referenced in the complaint"); *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims"). The MDOC's policy directives are a proper subject of judicial notice under Fed. R. Evid. 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'"); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) (noting that "a [c]ourt may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b). The content of the policy directives at issue are not subject to reasonable dispute. They are published by the MDOC on its publicly available government website. The Court notes that taking judicial notice of the policy language says nothing about whether Defendants complied with the policies in this instance.

from a prisoner's account does not implicate due process protection. *See id.* (questioning "whether the inmates were truly 'deprived' of their property . . . where the copayment fee was deducted from their accounts in exchange for medical services"); *see also White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004) (recognizing the constitutionality of charging the copayment for medical services). The same result applies in other circumstances that are also more in the nature of a mutual transaction rather than a unilateral taking. *See, e.g.*, *Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir.1981) (per curiam) (no basis for due process claim where deductions from prisoner accounts for postage were "assessment[s] for value received" and plaintiffs did not contend that they did not receive the services for which they were charged) (cited in *Bailey*, 15 F. App'x at 251); *Gallagher v. Lane*, 75 F. App'x 440, 441 (6th Cir. 2003) (upholding the dismissal of the inmate's due process claim because he was "not deprived of his property by virtue of the deductions from his prison trust account for court costs and medical copayments); *Erdman v. Martin*, 52 F. App'x 801, 803 (6th Cir. 2002) (concluding that withdrawals from a prisoners account to pay his court costs or the costs of his confinement, "funds . . . being utilized for [the prisoner's] benefit," were not unconstitutional); *cf. Sickles v. Campbell Cnty.*, 501 F.3d 726, 730–32 (6th Cir. 2007) (holding that due process is not violated when funds are withheld from an inmate's account for booking and housing costs).

   The mutuality of healthcare transactions in the MDOC are reflected in the documentation required by the policy directive. A prisoner is required to sign a Prisoner Health Care Services form to request a healthcare visit. MDOC Policy Directive 03.04.101 ¶ I. The prisoner's signature is intended to "serve as the prisoner's agreement to pay the charged fee and to have funds removed from their account to pay the fee." *Id.* ¶ J.

Where the healthcare request does not show agreement to pay, the policy directive requires that a hearing be conducted under the "Prisoner Funds" policy directive. That procedure is started by the preparation of a Notice of Intent to Conduct an Administrative Hearing. *Id*. ¶ J; MDOC Policy Directive 04.02.105 ¶¶ T–W). Plaintiff attached the Notice of Intent related to his healthcare charge to his complaint. (ECF No. 1-1, PageID.15.) The Notice indicates that Plaintiff requested a hearing. (*Id*.)

Other than attaching the Notice of Intent, Plaintiff does not provide any detail regarding the process followed by the MDOC in connection with the healthcare charge. It is not clear whether a hearing was held or that the hearing complied with the requirements of MDOC policy. Whether or not the MDOC followed its own policy, however, Plaintiff cannot prevail on his due process claim.

"Procedural due process requires that the government, prior to depriving an individual of their property, provide that individual with notice of the proposed action and an opportunity to be heard." *Paterek v. Village of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015) (citing *Morrison v. Warren*, 375 F.3d 468, 473 (6th Cir.2004)). The nature of the notice and the opportunity for hearing must satisfy the purpose of process:

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.' *Stanley v. Illinois*, 405 U.S. 645, 647, 92 S.Ct 1208, 1210, 31 L.Ed.2d 551.

*Fuentes v. Shevin*, 407 U.S. 67, 81–82 (1983).

The specified purposes of process are met in the procedure adopted by the MDOC. Before funds are removed from a prisoner account the MDOC must hold a fact-finding hearing that

11

complies with the requirements of Michigan Administrative Code Rule 791.3310. That rule requires written notice of the purpose of the hearing, a hearing where the prisoner is provided an opportunity to be heard, and a summary report of the result from the hearings officer. Mich. Admin. Code R. 791.3310. This Court has concluded that the procedures required before funds are removed from a prisoner's account—as spelled out in MDOC Policy Directive 04.02.105, ¶¶ T–W, which incorporates the requirements of Rule 791/3310—provide all of the process a prisoner is due. *Moore v. Washington*, No. 1:20-cv-1184, 2021 WL 508304, at *2–4 (W.D. Mich. Feb. 11, 2021) *aff'd*, No. 21-1310 (6th Cir. Nov. 24, 2021). Therefore, if prison officials complied with the MDOC policy regarding removal of the money from Plaintiff's account, then Plaintiff received all of the process he was due.

If prison officials failed to comply with the MDOC's polices regarding removal of funds from a prisoner's account, his due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, have "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id*. at 544.

Where the state provides such a post-deprivation remedy, the plaintiff must plead and prove the inadequacy of the remedy. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (explaining that "a procedural due process claim will not be stated unless the plaintiff pleads and

proves that his available state remedies are inadequate to redress the wrong"). Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers . . . ." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of liberty or property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivations he suffered, either negligent or intentional, of his liberty or property.

For all of these reasons, Plaintiff's contention that he was unconstitutionally deprived of his property fails to state a claim upon which relief may be granted.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

13

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  October 17, 2024            /s/ Ray Kent
                                    Ray Kent
                                    United States Magistrate Judge

14